# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KEVIN RAMON MOSBY #327-278
    Plaintiff                      :

         v.                  :     CIVIL ACTION NO. CCB-11-2057

LT. CHARLES THORNE, et al.,        :
    Defendants

## MEMORANDUM

Pending is an unopposed[1] motion for summary judgment filed on behalf of defendants.[2]

Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local

Rule 105.6 (D. Md. 2011).

### Background

Plaintiff currently is housed at North Branch Correctional Institution[3] ("NBCI"),

Maryland's maximum security prison. He filed this action under 42 U.S.C. § 1983,[4] alleging that

---

[1] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the Clerk on January 23, 2012, informed plaintiff that a dispositive motion had been filed, that plaintiff had seventeen days in which to file written opposition to the motion, and if plaintiff failed to respond, the case could be dismissed without further notice. ECF No. 26. Plaintiff requested additional time, to and including March 22, 2012, in which to file an opposition, ECF No. 27, but otherwise failed to respond.

[2] Plaintiff's request for default judgment, ECF No. 12, is denied.

[3] Plaintiff has submitted a document entitled "Extreme Motion for Federal Protective Custody," ECF No. 29, complaining of actions allegedly taken by NBCI corrections personnel. The motion is unrelated to the allegations at issue in the instant case and shall be denied without prejudice.

[4] Through oversight, the court has failed to consider the fee assessment provided by the prison finance office, which computed an initial partial filing fee of $3.37. ECF No. 4. As the fee itself would not cover the administrative costs in obtaining it, the initial fee is waived. Plaintiff shall, however, remain liable for the $350.00 filing fee and shall make monthly payments of 20% of each subsequent month's income credited to his account as continued partial payments on the remainder of the $350.00 filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(2). The Fiscal Administrator at NBCI shall forward payments from plaintiff's prison account to the Clerk each time the amount in plaintiff's prison account exceeds $10.00 until the $350.00 filing fee is paid in full. The Fiscal Administrator is reminded that if plaintiff has been ordered to make PLRA payments in more than one action or appeal in the federal courts, the total amount collected for all cases cannot exceed 20 % of his preceding monthly income or trust account balance, as calculated under 28 U.S.C. § 1915(b) (1) and (2) and *Torres v. O'Quinn*, 612 F.3d 237, 240 (4th Cir. 2010).

on July 28, 2010, while incarcerated at Eastern Correctional Institution (ECI), he visited the medical department because he did not receive his anti-psychotic medication.  Plaintiff alleges that Lt. Burkett and Sgt. Muir attempted to place him in the Administrative Segregation Observation Area ("ASOA").  Plaintiff, however, refused placement in ASOA because he was not suicidal.  After he refused, plaintiff alleges he was sprayed with mace, bitten by a K-9 dog, and "stomped" and kicked in the chest by defendants.  *Id*.  Plaintiff states at that point, he decided to cooperate.  After medical treatment for the dog bite, he was placed in ASOA on staff alert status. ECF No. 1 with attachments and revisions.  He also claims that his mail was stopped, and money was stolen from his inmate account.  *Id*.  Plaintiff attaches Request for Administrative Remedy (ARP) ECI #1825-11, dated June 23, 2011, regarding a mail complaint that was filed almost one (1) year after the alleged incident.  *Id*.  Plaintiff admits that he did not file an ARP regarding the claims in this lawsuit because he was involved in other litigation pending in the Court of Special Appeals.  *Id*. (citing CSA No. 19-09-013523).[5]  For relief, plaintiff requests compensatory damages for excessive use of force, mail tampering and theft of money from his inmate account.  *Id*.

Defendants present a somewhat different version of events.  Plaintiff was transferred to ECI on March 10, 2010. ECF No. 25, Ex. 1, at 2, OBSCIS Printout of a Portion of Plaintiff's Traffic History.  On July 28, 2010, at approximately 11:00 a.m., plaintiff arrived at the East

---

[5] Plaintiff does not discuss the state court litigation here, but he did reference it in a separate action in federal court, *Mosby v. Green*, Civil Action No. CCB-10-3508.  In *Green*, plaintiff mentioned CSA No. 19-09-013523 and referred to the state court case as involving a "similar incident."  *Green*, Civil Action No. CCB-10-3508, ECF No. 1, at 2.

In *Green*, plaintiff filed suit against ECI's Warden Green for the same alleged assault of July 28, 2010 at issue here.  Plaintiff attributed none of the actions he complains about to Warden Green.  Green's motion to dismiss was granted by this court on July 8, 2011.  *See id*., ECF No. 19.  Plaintiff filed the instant complaint against named correctional defendants other than Green on July 26, 2011, and for the first time raised allegations concerning delay of mail and an alleged theft of money from his prison account.  He does not name the individuals who allegedly delayed his mail and stole money from his inmate account; accordingly, those claims are dismissed from this action without prejudice.

Dispensary upset about his medications.[6]  *Id*., Ex. 2 at ¶ 2, Decl. of Sgt. Keith Muir.  Muir, then assigned to the East Dispensary, was familiar with plaintiff's history, and immediately placed other prisoners waiting at the Dispensary in the bullpen to wait to be seen by medical staff.  *Id*. Dr. Siracusano then spoke with plaintiff regarding his medications and ordered plaintiff be placed in the ASOA on Staff Alert Level I status.  *Id*. at ¶ 3.  Defendant Lt. Burkett was called after plaintiff refused to leave the area.  *Id.,* Ex. 3 at ¶ 2, Decl. of Lt. Brett Burkett.  When Burkett arrived in the Dispensary, plaintiff was loud and disruptive, refusing to go to ASOA and stating that he was not moving anywhere until he received his medication.  *Id*. at ¶ 2.  Burkett observed that plaintiff was tense, sitting with his arms crossed in front of him, his fists clenched and a scowl on his face.  *Id*. at ¶ 3.  Burkett asked plaintiff to explain the problem and plaintiff indicated that he was "not leaving this room until I get my medication."  Plaintiff also stated that he was "hearing voices."  *Id*.  Burkett ordered plaintiff to stand up and place his hands behind his back to be handcuffed, and plaintiff refused, stating "You will need an army to move me."  *Id*. Plaintiff continued to refuse orders to be handcuffed, pulled away from Muir and Burkett, and continued to resist while attempting to rise from his seated position in the chair.  *Id.*, Ex. 2 at ¶ 4. Burkett placed his hand on plaintiff's left wrist and again ordered plaintiff to stand up, and plaintiff tensed up and snatched his left arm back, clenching his fist.  *Id.,* Ex. 3 at ¶ 3.  Muir assisted by attempting to control plaintiff's right arm and wrist.  *Id*. at ¶ 4.  At that point, plaintiff began to thrash back and forth in the chair, keeping his arms pinned against his chest with his fists still clenched in his groin area.  *Id*.  Because plaintiff kept his fists clenched the entire time, Burkett was unable to determine if he possessed a weapon.  *Id*.  This caused concern because plaintiff had not been strip-searched before he entered the Dispensary.  *Id*., Ex. 2 at ¶ 5.  Plaintiff

---

[6] An order for plaintiff's psychiatric medications had not yet been approved; at the time of the incident, plaintiff had gone at least a week without certain medications.  *Id*., Ex. 3 at ¶ 11; Ex. 4, at 80–83; and Ex. 6, at 11–16, 142–195.

was pulled out of the chair and placed onto the floor face-down with his arms under him while Burkett and Muir attempted to handcuff him.

A Signal 13 (request for correctional officer assistance), was called, and additional officers arrived. Defendant Sgt. Wong responded with his patrol dog, Tank, and defendant Sgt. Becker used a device to attempt to pry plaintiff's left arm from beneath his body. *Id*., Ex. 3 at ¶ 5. Pepper spray was then used. *Id*.; s*ee also id.*, Ex. 2 at ¶ 6. Plaintiff continued to refuse verbal orders to bring his hands from beneath his body, and Wong deployed Tank, who grabbed plaintiff's left shoulder. Several minutes later plaintiff's left arm was pried from beneath his body and Becker was able to pry his right arm out using an ASP, a collapsible tactical baton. Plaintiff was handcuffed and defendant Ward applied leg irons to plaintiff's ankles. *Id*., Ex. 3 at ¶¶ 5–7 & Ex. 2 at ¶ 6. Wong then ordered Tank to release his hold on plaintiff and Wong and Tank left the area. *Id.,* Ex. 3 at ¶ 7. Muir escorted plaintiff to ASOA without further incident where he remained seated in a chair until he was evaluated by medical staff. *Id.,* Ex. 2 at ¶ 6 and Ex. 3 at ¶ 8; s*ee also id.*, Ex. 4, Use of Force/Serious Incident Report (UOF/SIR) #ECI-10-060 dated July 28, 2010.

J. Daly, RN provided treatment, and photographs were taken. *Id*., Ex. 3 at ¶ 10; s*ee also id.*, Ex. 4, at 47–49, 80; & *id.*, Ex. 6, at 17–23, 25–31, 56–57, 59, 123–124, & 140–145. Medical records indicate a dog bite to left shoulder that required daily washing with soap and water and application of antibiotic ointment. *Id*., Ex. 4, at 17. A tetanus shot was given. *Id*. at 20. The punctures and lacerations healed without infections. *Id*. at 21, 31.

Plaintiff complied with a strip search and was placed in ASOA. *Id.*, Ex. 3 at ¶ 10 & Ex. 6, at 131–139. He received an infraction for the incident for violating rules #100 (disruption), #312 (interfering with officers' duties), #400 (disobeying direct orders) and #401 (refusing to

comply with a housing assignment). *Id.*, Ex. 4, at 70–71.  On September 2, 2010, plaintiff was

found guilty of violating Rule #400 at his adjustment hearing and received 60 days of

disciplinary segregation. *Id.,* Ex. 7, OBSCIS Printout of Infractions Data.

Plaintiff remained in ASOA for one (1) day, from the date of the incident, July 28, 2010,

until July 29, 2010.  *Id.,* Ex. 6, at 131–139.  He did not receive legal mail while in ASOA.  *Id.*,

Ex. 8 at ¶ 3, Decl. of Sgt. James Balderson, ECI's Litigation Coordinator and Mail Room

Supervisor.  Plaintiff did not file a Request for Administrative Remedy (ARP) regarding the use

of force incident on July 28, 2010.  ECF No. 1.  He was transferred to NBCI on October 3, 2011.

ECF No. 25, Ex. 1, at 1.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that
> there is no genuine dispute as to any material fact and the movant
> is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will

defeat the motion:

> By its very terms, this standard provides that the mere existence of
> *some* alleged factual dispute between the parties will not defeat an
> otherwise properly supported motion for summary judgment; the
> requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest

upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*.,

346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The

court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all

reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644–45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### Analysis

Prior to examining the merits of the allegations, the court must first examine defendants' assertion that plaintiff's case should be dismissed in its entirety due to plaintiff's failure to exhaust available administrative remedies. The Prison Litigation Reform Act ("PLRA") generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to plaintiff's allegations. His complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Id.* at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943–44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (stating that a prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the DOC to its prisoners. If this request is denied, the prisoner may file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner must then file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See* Md. Code Ann. Corr. Servs. §§ 10-206, 10-210; Md. Code Regs. title 12 § 07.01.03.

Given plaintiff's total failure to pursue administrative remedies, his case must be dismissed. Defendants' dispositive motion shall be granted. A separate order follows.


May 16, 2012                                     /s/
Date                                    Catherine C. Blake
                                        United States District Judge


7